IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Dependency of S.E.S., <br><br> A minor child. | No. 81077-4-I <br><br> ORDER CHANGING CASE TITLE, WITHDRAWING OPINION, SUBSTITUTING OPINION, AND RECALLING MANDATE |

The Supreme Court of Washington granted discretionary review of the opinion filed on January 19, 2021, and on October 6, 2021 remanded the case with instructions to change the case title consistent with In re the Welfare of K.D., 198 Wn.2d 67, 491 P.3d 154 (2021). This court has considered the order and on its own motion a majority of the panel has determined that the mandate of May 21, 2021, should be recalled, the case title changed and name of the parent should be removed from the opinion, the opinion should be withdrawn, and a substitute opinion filed; now, therefore, it is hereby

Now, therefore, it is hereby

ORDERED that the clerk shall reinstate this appeal; and it is further

ORDERED that the opinion filed on January 19, 2021, is withdrawn; and it is further

ORDERED that the case title shall be changed consistent with K.D.; and it is further

ORDERED that the names of the parent be removed from the opinion; and it is further

ORDERED that a substitute unpublished opinion shall be filed.

FOR THE COURT:

_Smith, J._

_Mann, C.J._

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of<br><br>S.E.S.,<br><br>A minor child. | No. 81077-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — I.H.S the father of S.E.S. appeals the 2019 termination of his parental rights with respect to his daughter, S.E.S. He contends that the Department of Children, Youth, and Families (Department) failed to establish (1) that the Department offered all services necessary to address his parental deficiencies and (2) that the father was unlikely to remedy his deficiencies in the near future. We conclude that substantial evidence in the record supports the trial court's conclusions and affirm.

FACTS

S.E.S. is a 10-year-old girl and the third of the father's four children. In July 2016, the children were removed from the home for allegations of physical abuse stemming from S.E.S. and her brother having fractured arms. After further investigation, the Department concluded that the fractures were most likely accidental. However, due to findings of neglect related to supervision and medical and dental care, S.E.S. was found to be dependent on November 15, 2016. S.E.S. was 5 years old at the time she was removed from her parents'

Citations and pin cites are based on the Westlaw online version of the cited material.

custody, and she has remained in foster care since the removal.

In its termination petition, the Department alleged that the father's parental deficiencies included "lack of parenting skills, anger management, mental health issues, and lack of safe and stable housing." The trial court found that the father's parenting deficiencies included a "lack of parenting skills, which manifested in excessive discipline against the child, angry behavior which led to anger management issues, and general neglect and inability to meet the needs of his child."

S.E.S. and her father do not have a close relationship. S.E.S. has trauma and attachment disorders, which result in "monumental tantrums." The trial court described the children's reports of experiencing "extreme physical punishments and abusive discipline" from the father. The father yelled at his children, spanked S.E.S. during one visit, and "teased [her] in ways she did not like and even scared her." Furthermore, the court noted the father's failure to provide parental support to S.E.S., including a failure to notice when she was hungry, to bring activities to visits, or to properly supervise her. The court found that the father would fall asleep during visits and leave S.E.S. unsupervised in public settings. It noted his failure to engage with her during visits and found that he "is unable to, even for a short period, engage with his child" or to "put [her] needs above his own. This has been a consistent theme since the beginning of the case and remains true today." Furthermore, it found the father's "prospects for being able to adequately parent and provide for even the basic needs of the child are dismal." The father does not challenge any of these findings on appeal.

At the outset of the dependency, the trial court ordered a psychological evaluation with a parenting component and parent coaching. The Department referred the father to the psychological evaluation in December 2016, and the evaluator recommended anger management treatment and parent coaching. The Department provided the father with "three separate rounds of parent coaching/instruction, including parent coaching through both Triple P and Family Preservation Services, . . . an anger management evaluation and treatment, and domestic violence assessment." The father also used his private insurance to access neurology appointments and testing as well as dialectical behavior therapy. In an unchallenged finding, the court determined that "[t]hese parenting programs were the appropriate programs to remedy [the father's] deficiency of lack of parenting skills and neglect and the Department provided the proper and appropriate services to help [him] parent better."

After a trial, the court terminated the father's parental rights. The father appeals.

ANALYSIS

To terminate parental rights, the Department must establish the six statutory factors provided in RCW 13.34.180(1) by clear, cogent, and convincing evidence. In re Dependency of K.N.J., 171 Wn.2d 568, 576-77, 257 P.3d 522 (2011). If these factors are met, the Department must then prove by a preponderance of the evidence that termination is in the best interests of the child. In re Dependency of T.R., 108 Wn. App. 149, 160, 29 P.3d 1275 (2001).

Here, the father contends that the Department failed to meet its burden

with regard to two of the statutory factors: (1) that the Department offered all services necessary to address his parental deficiencies and (2) that the father was unlikely to remedy his deficiencies in the near future. Because the trial court's conclusions are supported by substantial evidence, we disagree.

Standard of Review

On review, we uphold the trial court's factual findings if they are supported by substantial evidence, and if so, we then determine whether the findings support the court's conclusions of law and judgment. In re Dependency of P.D., 58 Wn. App. 18, 25, 792 P.2d 159 (1990). Substantial evidence is "evidence in sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." In re Welfare of T.B., 150 Wn. App. 599, 607, 209 P.3d 497 (2009). Unchallenged findings are verities on appeal. In re Welfare of L.N.B.-L., 157 Wn. App. 215, 243, 237 P.3d 944 (2010). We defer to the trial court's advantage in viewing the proceedings and will not reweigh the evidence or determine the credibility of witnesses. In re Welfare of A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015). Finally, we view the evidence and reasonable inferences in the light most favorable to the prevailing party. In re Termination of M.J., 187 Wn. App. 399, 407, 348 P.3d 1265 (2015).

Provision of Necessary Services

The father contends that the court erred in finding that the Department provided him with the necessary services to correct his parental deficiencies. Because substantial evidence supports the court's findings, we disagree.

RCW 13.34.180(1)(d) requires the Department to establish that court-

4

ordered services "have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided." "A service is necessary within the meaning of the statute if it is needed to address a condition that precludes reunification of the parent and child." In re Dependency of A.M.M., 182 Wn. App. 776, 793, 332 P.3d 500 (2014). This inquiry is "not limited to services ordered by the court during the dependency, but rather the Department must show it offered all necessary available services." In re Parental Rights to I.M.-M., 196 Wn. App. 914, 921, 385 P.3d 268 (2016). Even if the Department "inexcusably fails" to offer services, termination may be appropriate if the services "would not have remedied the parent's deficiencies in the foreseeable future." T.R., 108 Wn. App. at 164.

### 1. Housing Services

The father first contends that the Department failed to refer him to services that would help him find safe and stable housing, despite alleging that a lack of such housing was one of his parental deficiencies. Where lack of housing is a parental deficiency, the Department unquestionably has an obligation to refer the parent to housing resources to the extent reasonably possible. In this case, where the Department alleged lack of housing as a parental deficiency in its petition for termination, the Department should have provided such services. However, this failure does not mandate reversal, because the trial court did not conclude that lack of safe and stable housing was a parental deficiency.

The trial court concluded that the father's parenting deficiencies included a "lack of parenting skills, which manifested in excessive discipline against the child, angry behavior which led to anger management issues, and general neglect and the inability to meet the needs of his child." The court did note elsewhere that as of trial, "the father did not have a suitable home to take the child to and continued to have a lack of safe and stable housing." However, the father testified that he would be able to obtain suitable housing within three months. Making reasonable inferences in favor of the Department, and given the court's uncontested findings that as of trial there was an unacceptable risk that S.E.S. would be neglected in her father's care or that the father would "commit significant and abusive physical discipline against the child," the father's short-term lack of safe housing was not a condition "preclud[ing] reunification of the parent and child." See A.M.M., 182 Wn. App. at 793.

2. Bonding Services

The father next contends that "[b]onding therapy in the context of parent-child or family therapy was a necessary service" and the Department's failure to provide such therapy barred the court from terminating his parental rights. He challenges the trial court's findings that family or parent-child therapy was not a necessary service. Specifically, the court found that while they "could help eventually with parenting deficiencies," "after three years, because there was not enough progress in other areas, [these therapies were] not something that could solve parental deficiencies in the foreseeable future." Because these findings are supported by the record, we disagree with the father that bonding therapy

6

was a necessary service.

One doctor who evaluated the father testified that in order for therapy with his children to be effective, the father needed "to have insight into his behavior so he could engage effectively with his kids and not . . . come off as dismissive." She testified that "if he didn't have insight into his own . . . feelings, it could be harmful." In an unchallenged finding, which is supported by the testimony of the father's anger management counselor, the trial court found that the father "was unable to obtain sufficient insight [into] his behaviors." Because substantial evidence supports the trial court's findings that S.E.S. and her father "are not ready to participate in counseling together" and that it could not "solve parental deficiencies in the foreseeable future," we affirm the trial court's finding that parent-child or family therapy is not a necessary service. See T.R., 108 Wn. App. at 164 (Termination is appropriate if unoffered services "would not have remedied the parent's deficiencies in the foreseeable future.").

The father cites In re Parental Rights to B.P., 186 Wn.2d 292, 317, 376 P.3d 350 (2016), for the proposition that the parent does not have the "burden to prove that these services would succeed before the State provided them." However, the court in B.P. conditioned its holding that the parent should have been provided attachment services on the fact that the Department had not established that the services would be futile. Id. There was no testimony that such services "were withheld because they would have failed or taken too long." Id. at 318. In this case, as described above, there is support in the record for the trial court's conclusion that the father continued to lack insight which would be a

prerequisite for successful parent-child or family counseling.[1]

Accordingly, the trial court's finding that the Department provided the father with necessary services is supported by the record.

Likelihood of Remedying Deficiencies in the Near Future

The father also challenges the trial court's conclusion that he was unlikely to remedy his deficiencies in the near future. Specifically, he challenges the trial court's finding that the near future for S.E.S. was "'less than three months,'" as well as the court's findings regarding the father's lack of progress in anger management. We conclude that the trial court's findings that S.E.S.'s near future was less than three months and that the father was unlikely to remedy his deficiencies in that time are supported by substantial evidence in the record.

RCW 13.34.180(1)(e) requires the Department to establish that "there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future." The focus of this factor is on "whether parental deficiencies have been corrected." In re Dependency of K.R., 128 Wn.2d 129, 144, 904 P.2d 1132 (1995). The question of "what constitutes the near future depends on the age of the child and the circumstances of the placement." In re Dependency of T.L.G., 126 Wn. App. 181, 204, 108 P.3d 156 (2005). Furthermore,

---

[1] The father also points to the availability of different options for bonding therapy, including parent-child interaction therapy. Because the trial court's findings that bonding therapy in general was not appropriate for S.E.S. and her father, we need not address whether such therapy was available. See RCW 13.34.180(d) (requiring "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future" to be offered).

> A parent's failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order shall give rise to a rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. The presumption shall not arise unless the petitioner makes a showing that all necessary services reasonably capable of correcting the parental deficiencies within the foreseeable future have been clearly offered or provided.

RCW 13.34.180(1)(e).

First, the court reasonably determined that S.E.S.'s future was less than three months because this determination is supported by several unchallenged findings. The court found that S.E.S. was almost nine years old and had been waiting for three to four years for resolution in this case. Furthermore, S.E.S. had "needs arising out of her trauma and attachment disorders, which result[ed] in monumental tantrums that last between 30 and 45 minutes." While S.E.S.'s foster home was planning to adopt her, further delay in permanency could have escalated her behaviors and decreased her ability to be integrated into a stable and permanent home. Accordingly, S.E.S. was "in grave need of resolution." Given these unchallenged facts and our deference to the fact finder, which is especially important in child welfare proceedings, we find no basis to reject the trial court's determination. A.W., 182 Wn.2d at 711.

The father next contends that the court erred in finding that he was unlikely to remedy his deficiencies in the near future. The father points specifically to the testimony of Dr. Sierra Swing, who said that in a best-case scenario, the father could become a minimally safe parent "in the next three months." First, because we find substantial evidence supports the trial court's findings that S.E.S.'s near future is less than three months, this testimony does

9

not establish that the father would remedy his deficiencies in the near future. Second, this statement is contrasted with the testimony of other experts, who stated that the father's "prospects of ever being able to parent the child or be safe to do so [were] dismal." Different witnesses offered different opinions, and it is the trial court's role to weigh the credibility of these witnesses. See A.W., 182 Wn.2d at 711. We decline to reweigh the evidence and accordingly uphold the trial court's determination.

The father disagrees and points to evidence in the record that he had made considerably more progress in anger management than the court acknowledged. However, even if we agreed, this would not mandate reversal, because the trial court's other findings still establish that the father was unlikely to remedy his deficiencies in the near future. For instance, the father does not challenge the trial court's finding that his "prospects for being able to adequately parent and provide for even the basic needs of the child are dismal." Given the evidence in the record indicating the father's failure to provide for S.E.S.'s needs or make improvement in this regard, we conclude that substantial evidence supports the trial court's finding that he was unlikely to remedy his deficiencies in the near future.

Accordingly, we affirm the termination of parental rights.

WE CONCUR:

Mann, C.J.